# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | )( | |
| | )( | **Criminal No. 22-350 (JEB)** |
| **v.** | )( | **Judge Boasberg** |
| | )( | **Sentencing: December 8, 2023** |
| **JUSTIN DEE ADAMS** | )( | |

## MEMORANDUM IN AID OF SENTENCING

COMES NOW the defendant, Justin Dee Adams, by and through undersigned counsel, and respectfully provides the following information to aid the Court in determining the appropriate sentence for him.  Towards this end, Mr. Adams would show:

1.      In connection with events that occurred outside the U.S. Capitol on January 6, 2021, Justin Dee Adams was charged by indictment with two felonies and three misdemeanors: 1) Civil Disorder under 18 U.S.C. § 231(a)(3) (felony), 2) Assaulting, Resisting, or Impeding a Federal Officer under 18 U.S.C. § 111(a)(1) (felony), 3) Entering and Remaining in Restricted Grounds under 18 U.S.C. § 1752(a)(1) (misdemeanor), 4) Disorderly or Disruptive Conduct in Restricted Grounds under 18 U.S.C. § 1752(a)(2) (misdemeanor), and 5) Physical Violence in Restricted Grounds under 18 U.S.C. § 1752(a)(4) (misdemeanor).  Indictment (ECF #6).  On August 24, 2023, pursuant to an agreement he had reached with the government, Mr. Adams pled guilty to the count of the Indictment charging him with Assaulting, Resisting, or Impeding a Federal Officer under 18 U.S.C. § 111(a)(1) (Count Two).  Plea Agreement at 1 (ECF #19).  Sentencing on this count is now set for December 8, 2023.

2.      The conduct that Mr. Adams is being sentenced for in this case is aberrational in nature for him and can be related to emotional problems that he has been having as a result of a traumatic brain injury he suffered years ago and the resulting fairly

recent onset of grand mal seizures.  Mr. Adams is currently treating his emotional issues and related medical condition with services from the Veteran's Administration.  He is in a much different psychological space now than he was on January 6, 2021.

3.      While Mr. Adams is currently on release in this case, for reasons that are explained below, he still has over eight months of time served in.  Under 18 U.S.C. § 3553(a), the appropriate sentence for Mr. Adams is time served followed by a period of supervised release.

## DISCUSSION

In determining an appropriate sentence for a defendant, the Court is to consider the factors spelled out in 18 U.S.C. § 3553(a).  These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kind of sentences available;

(4) the kinds of sentence and the sentencing range established… [by the Sentencing Guidelines];

(5) any pertinent policy statement… issued by the Sentencing Commission…;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## Nature and Circumstances of the Offense

According to the Statement of Offense that Mr. Adams agreed to as part of his guilty plea in this case, on January 6, 2021, Mr. Adams was on the Upper West Plaza of the U.S. Capitol where officers had set up a police line.  While on the plaza, at 2:04 p.m., Mr. Adams walked towards the police line with his hands raised above his head.  When he made contact with an officer, he was "pushed back several feet."  He then charged the police line and struck an "officer, who was wearing a helmet, twice in the head."  Statement of Offense at 4 (ECF #20).  Approximately nine minutes later, Mr. Adams grabbed a bicycle rack that the police were using as part of barricade.  When an "officer attempted to prevent [Mr. Adams] from removing the bike rack, [Mr. Adams] threw a plastic bottle at the police officer."  Id.

The above-described conduct by Mr. Adams was captured by body-worn cameras from various police officers.  The footage of these cameras was turned over to Mr. Adams in discovery.   A review of the footage shows that, when Mr. Adams was approaching the police line with his hands up, he was doing so with deliberate slowness and the obvious intent to appear non-threatening.  Whatever physical contact he may have had with the police when he got up to the line was minimal and incidental.  He only charged at the line and struck the officer's helmet with his hand when, after he got up to the police line, he was shoved hard by an officer and sent sprawling backwards into a group of people.  Also, the footage shows that, when he threw the plastic bottle at the officer, he was being sprayed in the face with a chemical agent and that he threw a bottle which he just happened to be holding at the time as he was cowering down to protect his eyes in reaction to this.  The footage shows that the bottle was a small plastic Gatorade bottle that was empty.  The above points are not being made to minimize Mr. Adams' assaultive conduct.  Rather, they are being made to show that that that conduct was fundamentally reactive in nature, which is important, as will be shown below.  It should also be noted, that shortly after Mr. Adams threw the bottle, he left the Capitol grounds and did not participate further in the events at

the Capitol that day.  Moreover, his conduct occurred fairly early on in relation to those
events.  The building was not actually breached until around the same time as the above-
described by Mr. Adams was occurring, and the evacuations at the building had not yet
begun.  See Statement of Offense 2-3.  The resulting disruption that occurred after Mr.
Adams had left the Capitol grounds suspended the hearing to certify the Electoral College
votes at the Capitol until after 8:00 p.m.  See  id. at 3.

Mr. Adams was not arrested for what he did outside the Capitol on January 6 until
October 19, 2022.  He was arrested in Utah on a warrant that had issued in this case.
Arrest Warrant, Return in (ECF #5).   At the time that he was arrested, Mr. Adams was
alleged to have assaulted one of the officers who arrested him.  Consequently, when he
was brought before the magistrate judge in the United States District Court for the District
of Utah for his initial appearance on the warrant (in case 22-mj-707 (JCB)), he was
charged with Assaulting, Resisting, or Impeding a Federal Officer under 18 U.S.C. §
111(a)(1) in a new case in the Utah court.  Complaint, 22-mj-736 (JCB) (ECF #1).  When
he appeared in the Utah court, he was ordered held pending a detention hearing in both this
case and his new Utah case.  Minute Entry, October 19, 2022, 22-mj-707 (JCB) (ECF #4);
Minute Entry, October 20, 2022, 22-mj-736 (JCB) (ECF #4).  Subsequently, he was
ordered detained in both cases.  Order of Detention Pending Trial, 22-mj-707 (JCB) (ECF
#12); Order of Detention Pending Trial, 22-cr-419 (DBB) (ECF #16).  On June 16, 2023,
in his Utah case, Mr. Adams was acquitted at trial.  Judgment, 22-cr-419 (DBB) (ECF
#125); see also PSR at 12.  With the acquittal, the hold in that case was obviously
dissolved.  On June 28, 2023, the order of detention that had been put in place in this case
when Mr. Adams first appeared in the United States District Court for the District of Utah
was reviewed, and Mr. Adams was released on conditions.  Order Setting Conditions of
Release, 22-mj-707 (JCB) (ECF #19).  As a result of all this, Mr. Adams is now on release
in this case, and he has over eight months of time served in.

Though Mr. Adams felt obliged to take his Utah case to trial, he always desired to plead guilty and accept responsibility in this case.  Indeed, the plea agreement in this case was fully worked out and executed by March 2023.  However, during this time, Mr. Adams was being held in Utah pending trial in his case there.  Accordingly, the plea hearing had to be put off until after Mr. Adams' case in Utah was disposed of.  Given that Mr. Adams was not arrested until October 2022, the turn-around time for working out and executing the plea agreement (in March 2023) must be regarded as fairly quick.  Moreover, this turn-around time would have been much shorter if Mr. Adams was not being held in Utah at the time.  Undersigned counsel, who lives in Maryland and has his office in D.C., could not visit with Mr. Adams in person, and while the facility that Mr. Adams was being held at in Utah did permit video visitation, counsel could not review the video evidence for this case with Mr. Adams during his video visits with him.  Additionally, the facility would not allow Mr. Adams have a device for him to view the video evidence on even if counsel could have sent it to him on a hard drive.  In order for Mr. Adams to review the video evidence and discuss it with counsel, counsel had to send it on a hard drive to Mr. Adams' attorney in his Utah case, who would then periodically show portions of it to Mr. Adams when he had in-person visits with Mr. Adams in connection with the Utah case. Undersigned counsel and Mr. Adams would then discuss the evidence in subsequent video visits.  All of this made it time consuming for counsel to his due diligence in going over the evidence with Mr. Adams before advising and endorsing a plea agreement for him in this case.  Accordingly, given the above, the fact that Mr. Adams formally entered into a plea agreement with the government by March 2023 shows a very ready willingness on his part to accept responsibility for his actions in this case.

### History and Characteristics of the Defendant

Mr. Adams is 49 years old.  Mr. Adams lives with his wife and their two children, aged 10 and 7 in Utah.  Also living in the household is an adult child of Mr. Adams from a

previous relationship.  See Presentence Investigation Report (PSR) at 2, 13, 15, 17.  Mr. Adams was raised in a large Mormon family.  See id. at 13-15.  After high school, Mr. Adams enlisted in the United States Army and served on active duty from 1991-1995.  He was then an Army reservist until 1999, at which point he received his Honorable Discharge.  See id. at 21.  After, he left active duty in 1995, Mr. Adams held a number of different jobs, including being an over-the-road truck driver for a period.  However, most Mr. Adams' employment was in the customer-service and technical-support field,  and from 2012 to 2018, Mr. Adams was employed as customer-service representative for Curve Dental, a company that has a billing-and-insurance platform that dental offices across America use.  See id. at 20.  Unfortunately, in 2018, Mr. Adams began having grand mal seizures, which impacted his ability to work.  See id. at 17, 18, 20.

        At this point, it must be noted that, in 1998, Mr. Adams was in a very serious motorcycle accident in which he suffered a traumatic brain injury.  As a result of the accident, Mr. Adams was hospitalized for over two months, and had to learn to walk and talk again.  See PSR at 17.  After his accident, Mr. Adams began having what he calls "simple seizures," but which can probably be clinically described as petit mal seizures. See id.  Also, depressive symptoms, which he had experienced to a lesser extent in his teens, resurfaced again in stronger form.  See id. at 18.  However, the seizures and the depression, which he appears to have successfully treated with medication, see id., were not severe enough to keep Mr. Adams from working and having a successful career.  This appears to have changed in 2018, when instead of having petit mal seizures, Mr. Adams began having the above-referenced grand mal seizures.  Also, at this time, his depression became significantly more serious.  See id. at 18.  Mr. Adams reports that, when the grand mal seizures and accompanying severe depression started, he began having  problems keeping his emotions under control.  After he began having the grand mal seizures, Mr. Adams found it very difficult to do his job, and he left Curve Dental in 2018.  See id. at 20.

After he left his job at Curve Dental, Mr. Adams, who has always been good with his hands, started a modest home business manufacturing custom holsters for firearms. See PSR at 21.  However, working at home left Mr. Adams largely isolated from everyone but his immediate family, especially when the COVID pandemic started .  Mr. Adams now recognizes that this isolation exacerbated the depression which had already become fairly severe and deepened his problems dealing with his emotions.  It was during this period of isolation and emotional disturbance that Mr. Adams began consuming information online that led to him decide to come to D.C. on January 6, 2021 to protest what he thought at the time was a stolen presidential election.

Upon being released in this case after his acquittal in his Utah case, Mr. Adams has focused on getting services from the Veteran's Administration (V.A.) to treat his seizures and emotional issues.  See PSR at 18.  While incarcerated in Utah, Mr. Adams had come to see that the depression and emotional problems that developed with the onset of his grand mal seizures, the isolation he sank into, and the criminal conduct he is now going to be sentenced for are all interrelated, and he resolved to deal with his issues for the benefit of himself and his family going forward.  This epiphany was related to his desire to plead guilty in this case and accept responsibility for his actions.  A social worker who works with the V.A. has written a letter detailing the services that Mr. Adams is currently receiving from the V.A.  Attachment, Letters of Support at 1 (Letter from Social Worker Capell).   Even before his arrest in this case, Mr. Adams had turned to the V.A. for help once he began having grand mal seizures.  See PSR at 18.  However, after his release in this case, Mr. Adams has been seeking help from the V.A. with greater focus and commitment.  In regards to the services he is currently receiving form the V.A., of particular note is a work-therapy program that Mr. Adams has entered into where he works with other veterans receiving services at the V.A.  For participating in this program, Mr. Adams receives a stipend.  See PSR at 20; Attachment, Letters of Support at 1-2 (Letter from Social Worker Capell and Certificate).  Mr. Adams participation in this program is

particularly noteworthy because it is such a natural fit for him and points to a positive and productive future for him.

Mr. Adams has long had an interest in working with others in a helping capacity. From 2012 to 2018, Mr. Adams was a volunteer mentor with Big Brother and Big Sisters of Utah.  PSR at 20.  Also, he has worked in a volunteer capacity for abused and neglected children at Christmas Box House and at Draper Youth Ranch.  See PSR at 20.  Mr. Adams has always found such work rewarding and has long thought he would like to work professionally in the social-work field.  In keeping with this, Mr. Adams has, over the years, attended various colleges and universities in his local area getting credits towards a Bachelor's Degree in Sociology with the goal of becoming a social worker.  See PSR at 19.  He has done this in addition to his employment, family responsibilities, and volunteer activities.  Mr. Adams recent work with veterans at the V.A. has motivated him to pursue this goal with more focus at this time.  See PSR at 20.

Prior to the onset of his grand mal seizures, Mr. Adams had, apart from one traffic offense, no prior criminal record at all, PSR at 10-12, and under the Sentencing Guidelines, his criminal history score is zero, id. at 12.  Given that Mr. Adams is 49 years old, his low criminal history score alone shows that the conduct he is being sentenced for in this case is aberrational in nature.  This seems especially so when that conduct is considered in light of Mr. Adams' longstanding commitment to volunteerism and desire to work with others in a helping capacity.  Moreover, the fact that the conduct that Mr. Adams is being sentenced for occurred after the onset of his grand mal seizures strongly suggests that the conduct is related to those seizures and the poor emotional state that accompanied them, especially given how emotional reactive that conduct was.  This further underscores the aberrational nature of the conduct.  While Mr. Adams appears to have pled guilty without being represented by counsel in two recent cases involving what appear to disorderly-conduct

incidents, these two cases are from 2019 and 2022, respectively.[1]  See id. at 11.  Thus, like the assaultive conduct at issue in this case, they also post-date the onset of Mr. Adams' grand mal seizures and related emotional issues and should therefore be regarded as equally aberrational.

A number of people have written letters of support from Mr. Adams.  Attachment, Letters of Support.  These letters are from professionals and clergy involved in Mr. Adams' life and family members, neighbors, and friends.  Of particular note are letters from Mr. Adams' social worker at the V.A., the Bishop at Mr. Adams's church, a Lieutenant Colonel with the United States Air Force, and Mr. Adams' wife, Yvette. Attachment, Letters of Support at 1, 3, 4-5, 6-9.  In her letter, Yvette Adams gives an informative account of how Mr. Adams changed dramatically when his grand mal seizures started and how he is now returning to the man he was before the seizures began.  Id. at 7-9 In the letters, the people who know Mr. Adams consistently describe him as a fundamentally kind person and a devoted family man who contributes to his community. A review of the letters supports the conclusion that, while Mr. Adams went into a dark emotional place after the onset of his grand mal seizures in 2018, he has undergone a real change for the better after he was released in this case and began seriously pursuing treatment for his seizures and related depression and emotional issues at the V.A.  Mr. Adams has also written a letter for the Court to consider in determining the appropriate sentence for him.  Attachment, Letter from Justin D. Adams.  The letter shows that the man who wrote it is someone who is honestly accepting responsibility for his actions and trying hard to be a better person.

---

[1] Mr. Adams reports that, in both these cases, he was not actually arrested at the scene but rather given a citation to appear in court at later date.

**The Need for the Sentence Imposed (A) to Reflect the Seriousness of the Offense,**
**to Promote Respect for the Law, and to Provide Just Punishment for the Offense;**
**(B) to Afford Adequate Deterrence to Criminal Conduct; and**
**(C) to Protect the Public from Further Crimes of the Defendant**

It is not possible to argue that the events at the Capitol on January 6 were not serious and disturbing.  However, it is important to note that Mr. Adams never actually entered the Capitol on January 6 and that he dissociated himself from the events of that day fairly early on—before the evacuations of the building had even begun.  Moreover, the assaultive conduct that Mr. Adams engaged in that day appears to be aberrational in nature and related to his problems controlling his emotions that developed after the fairly recent onset of his grand mal seizures.  The fact that that conduct was reactive in nature underscores this point.  Also, Mr. Adams showed a ready willingness to plead guilty and accept responsibility for his actions.  Even more importantly, upon his release in this case, Mr. Adams immediately began getting real help from the V.A. to address his grand mal seizures and the emotional problems that developed after they started.  This, more than anything, shows a genuine desire on his part to take responsibility for his actions and strongly augurs against him re-offending.  Given all this, it is submitted that a sentence of time served, which is effectively more than eight months of incarceration, followed by supervised release reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.  Also, it affords adequate deterrence against future criminal conduct on Mr. Adams' part and properly protects the public.

**Sentencing Guidelines**

Under the Sentencing Guidelines, Mr. Adams' offense level is 17.  PSR at 10.  He is in Criminal History Category I.  Id. at 12  Thus, the Guidelines-recommended sentence for Mr. Adams is 24-30 months.  Id. at 23.  Despite this, a consideration of the factors spelled out in 18 U.S.C. § 3553(a) shows that downward variance from this Guidelines range is appropriate.

## The Need to Avoid Unwarranted Sentencing Disparities

In other cases, a number of defendants have, like Mr. Adams, pled guilty to Assaulting, Resisting, or Impeding a Federal Officer under 18 U.S.C. § 111(a) in connection with conduct they engaged in at the Capitol on January 6, 2021.  A review of the facts of these cases and the sentences the defendants received shows that, for Mr. Adams, a sentence of time served (which is effectively a sentence of more than eight months incarceration) followed by a period of supervised release is appropriate in order to avoid unwarranted sentencing disparities.  In case 21-cr-005 (ABJ), Mark Leffingwell pled guilty to one count of Assaulting, Resisting, or Impeding a Federal Officer under 18 U.S.C. § 111(a).  Plea Agreement at 1 (ECF #25).  According to the Statement of Offense that Mr. Leffingwell agreed to when he pled guilty, Mr. Leffingwell actually entered the U.S. Capitol and confronted USCP Officers inside the building.  He ended up punching one officer and then another officer.  When the officers attempted to detain him, he then punched the first officer a second time.  Statement of Offense at 3 (ECF #26).  Mr. Leffingwell was sentenced to 6 months incarceration followed by 24 months of supervised release.  Judgment at 2-3 (ECF #51).  In case 22-cr-314 (TNM), Joseph Leyden pled guilty to Assaulting, Resisting, or Impeding a Federal Officer under 18 U.S.C. § 111(a) for his conduct at the U.S Capitol on January 6, 2021.  Plea Agreement at 1 (ECF #28). According to his Statement of Offense, Mr. Leyden was part of a group that pushed through a fence line just outside the Capitol and then a second barricade that was manned by USCP Officers.  After the group had pushed through the second barricade, Mr. Leyden "advanced and rushed" towards an officer and then "lunged and pushed" him.  Statement of Offense at 4 (ECF #29).  Mr. Leyden was sentenced to 6 months incarceration followed

by 12 months supervised release.  Judgment at 2-3 (ECF #51).  In case 21-cr-282 (TSC),

Grayson Sherrill pled guilty to Assaulting, Resisting, or Impeding a Federal Officer under

18 U.S.C. § 111(a).   Plea Agreement at 1 (ECF #105).  According to his Statement of

Offense, while outside the Capitol, Mr. Sherrill joined a group or rioters who were fighting

with the police and forcing them to retreat.  In doing this he picked up a metal pole.  As a

second group of officers were coming to assist the officers who were being driven back,

Mr. Sherrill then swung at one of these officers with the metal pole.  Mr. Sherrill then

entered the Capitol and remained inside for 34 minutes.  Statement of Offense at 3-4 (ECF

#104).  Mr. Sherrill was sentenced to 7 months incarceration followed by 12 months

supervised release.  Judgment at 2-3 (ECF #129).  Finally, in case 21-cr-167 (DLF), Philip

Young pled guilty to all seven counts he had been charged with by indictment, including a

count of Assaulting, Resisting, or Impeding a Federal Officer under 18 U.S.C. § 111(a).

Minute Entry for Plea Hearing, November 2, 2022; see Indictment (ECF #14).  According

to his Statement of Offense, Mr. Young, while on the stairs of the Capitol leading up to the

Upper West Terrace, joined with others and "lifted and pushed a metal bicycle rack

barricade into a wall of officers," specifically causing the barricade to strike two identified

officers.  A little later, Mr. Young briefly assisted others who were "pushing a barricade"

into officers.  Statement of Offense at 4 (ECF #26).  Mr. Young was sentenced to a total of

8 months incarceration followed by 36 months supervised release.  Judgment at 3-4 (ECF

#38).

**CONCLUSION**

In consideration of the above, Mr. Adams submits that the appropriate sentence for him is time served and a period of supervised release with the chief condition of that supervised release being that he continue to receive medical and psychological treatment from the Veteran's Administration.

WHEREFORE the defendant, Justin Dee Adams, provides the above information to aid the Court in determining the appropriate sentence for him.

Respectfully submitted,


_____/s/_____
Jerry Ray Smith, Jr.
D.C. Bar No. 448699
Counsel for Justin Dee Adams
717 D Street, N.W.
Suite 310
Washington, DC 20004
E-mail: jerryraysmith@verizon.net
Phone: (202) 347-6101