UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** )( | |
| )( | **Criminal No. 22-350 (JEB)** |
| v.   )( | **Judge Boasberg** |
| )( | **Sentencing: December 8, 2023** |
| **JUSTIN DEE ADAMS**   )( | |

### REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR SELF-SURRENDER TO BOP

COMES NOW the defendant, Justin Dee Adams, by and through undersigned counsel, and respectfully replies to the Government's Sentencing Memorandum. Additionally, Mr. Adams moves this Honorable Court to allow him to self-surrender to the Bureau of Prisons should the Court see fit to sentence him to jail time in addition to the more than eight months of time served he already has in on this case. In support of this reply and related motion, Mr. Adams would show:

### Reply to Government's Sentencing Memorandum

In his Memorandum in Aid of Sentencing (Defendant's Memorandum) (ECF #26), Mr. Adams points out that he has over eight months of time served in on this case. Id. at 4. He argues that a sentence of time served and supervised release is the appropriate sentence for him under 18 U.S.C. § 3553(a). Id. at 2-12. In his memorandum, Mr. Adams directs the Court's attention to four other January 6 defendants who, like him, pled guilty to Assaulting, Resisting, or Impeding a Federal Officer under 18 U.S.C. § 111(a)(1) for engaging in conduct at least as serious, if not more so, as his. These defendant were all given sentences of incarceration that are less than the sentence of time served he seeks. Id.

1

at 11-12. Mr. Adams argues that a sentence of time served is thus appropriate for him in order to avoid unwarranted sentencing disparities among similarly situated defendants as per the requirement of 18 U.S.C. § 3553(a)(6).

In its Government's Sentencing Memorandum (ECF #27), the government argues that Mr. Adams should be given a sentence of 27 months incarceration. Id. at 1. In making this argument, the government downplays the importance of avoiding unwarranted sentencing disparities among similarly situated defendants per the requirement of § 3353(a)(6). Id. at 24-26. Given that the 27-month sentence it seeks for Mr. Adams would be at odds with what other comparable January 6 defendants have received, it is understandable why the government does so. Beyond this, the government argues that, to the extent that courts should try to avoid unwarranted sentencing disparities, they should do so by just formulaically sentencing defendants within their Guidelines ranges because the Guidelines were designed to promote sentencing uniformity. Id. However, at least in regards to January 6 cases, this argument is specious.

Admittedly, where the universe of similar conduct by other defendants is large, using case-to-case comparisons to sentence a defendant is not a reliable way to make sure that a particular sentence complies with the requirement to avoid unwarranted sentencing disparities per 18 U.S.C. § 3553(a)(6). One reason that this is so is because, in these situations, there is no way to know if the cases being used for comparison are in fact representative ones. Thus, in these situations, formulaic reliance on the Guidelines may be the best available tool for making sure a sentence comports with § 3553(a)(6). However, where the universe of similar conduct by other defendants is very small, as it is with January 6 defendants, sentencing a defendant based on case-to-case comparisons is a very

reliable way to avoid an unwarranted sentencing disparity and thus should be preferred over just formulaically sentencing him within his Guidelines range.  Indeed, for a January 6 defendant, if a sentence within his Guidelines range would not be in keeping with the sentences that other January 6 defendants who engaged in similar conduct received, sentencing that defendant within his Guidelines range anyway with the goal of achieving uniformity in sentencing would actually improperly give the Guidelines precedence over § 3553(a)(6).

In its sentencing memorandum, as if recognizing that it does need to justify the 27-month sentence it is seeking for Mr. Adams by showing that it is consistent with what other January 6 defendants have received, the government directs the Court's attention to two other January 6 defendants: Kevin Creek, case 21-cr-645 (DLF), and Cale Clayton, case 22-cr-139 (RCL).  Government's Sentencing Memorandum at 26-27.  Like Mr. Adams, Mr. Creek and Mr. Clayton both pled guilty to Assaulting, Resisting, or Impeding a Federal Officer under 18 U.S.C. § 111(a)(1).  Mr. Creek was given a sentence of 27 months incarceration, and Mr. Clayton was given a sentence of 30 months incarceration.  See id.  Accordingly, the government argues that a 27-month sentence for Mr. Adams does not create an unwarranted sentencing disparity.  Id. at 26.  However, this is not actually correct.  Mr. Creek and Mr. Clayton's conduct on January 6 was considerable more egregious that Mr. Adams' conduct.  While the assaultive conduct that Mr. Adams engaged in was of a fairly brief and reactive nature, see Defendant's Memorandum at 3, the assaultive conduct that Mr. Creek and Mr. Clayton engaged in was markedly more severe, deliberate, and sustained.

According to the Government's Sentencing Memorandum for Kevin Creek (ECF #48 in case 21-cr-645), Mr. Creek came to D.C. on January 6 with three other individuals prepared to engage in concerted violence.  In a backpack, Mr. Creek carried, among other things, "a first aid kit, mace, a boot knife, and binoculars."  Also, his three confederates and he each carried a radio to better communicate with each other.  Id. at 11-12.  Outside the Capitol, on the West Plaza of the building (a restricted area), Mr. Creek joined a mob that pushed through a bike rack barrier being manned by police officers.  Id. at 13.  Upon breaching the barricade, Mr. Creek then "ran through the front of crowd, grabbing [an officer] and driving him backward forcefully several feet through the West Plaza.  After letting go of [the officer], Creek hit him in the face shield of his helmet.'  Id. at 13-14.  After committing this assault, Mr. Creek then:

> [M]ade a beeline for [another officer] who was attempting to protect himself behind a bike rack barrier and a police shield.  Creek went around the bike rack barrier, gave [the officer] a hard shove in the shoulders, and then kicked him, causing [him] to fall backward to the ground.  [The officer] then tried to get up when another rioter pushed him back down to the ground.  After backing away from [the officer], Creek picked up what looks like a ratchet strap—a thick heavy strap with metal buckles—from the ground and threw it in the direction of the officers.

Id. at 16-17.

According to the Government's Sentencing Memorandum for Cale Clayton (ECF #32, Case No. 22-cr-139 (RCL)), Mr. Clayton assaulted three police officers in a restricted area just outside the Capitol on January 6.  Id. at 5-10.  Prior to assaulting the officers, Mr. Clayton had spent at least half an hour confronting and harassing officers who were trying to keep rioters from entering the Capitol.  Id. at 3-5.  He then moved to the Upper West Terrace of the Capitol, where he repeatedly grabbed and pulled on the shield of an officer and pushed the officer, trying to drive him back.  Id. at 5-6.  After stealing a police baton

4

that another officer had dropped, id. at 6, he then "squared up against" yet another officer, who had been "isolated away from the police line" by rioters who were now shoving him, id. at 7.  Mr. Clayton joined the attack on the isolated officer by gabbing and pulling on his shield.  Id. at 7-8.  After this, Mr. Clayton left the Upper West Terrace by the northwest stairs.  However, instead of leaving the restricted area, he returned to the stairs a few minutes later "proudly carrying" the baton he had stolen earlier.  Id. at 8.  He then "walked in front of the police line that was attempting to clear the area.  As he walked, he flaunted the stolen police baton."  Id.  As Mr. Clayton was "brandishing the police baton," an officer grabbed it, and a struggle ensued in which Mr. Clayton, instead of relinquishing the stolen baton he was brandishing, "shoved [the officer] in his head and grabbed his face mask."  Id. at 8-9.

Given the above, to give Mr. Adams a sentence of incarceration that is in keeping with the sentences that Mr. Creek and Mr. Clayton received—that is, a sentence of 27 months—would actually create an unwarranted sentencing disparity.  However, giving him a sentence of incarceration that is in keeping with the sentences that the four other January 6 defendants he discusses in his sentencing memorandum received —that is, a sentence of time served—would not.

### Self-Surrender

If the Court does see fit to give Mr. Adams a sentence of incarceration that does contain jail time in addition to the time he has already served, then Mr. Adams asks the Court to allow him to self-surrender to the Bureau of Prisons once it has completed the designation process for him.  Mr. Adams has been in full compliance with his release conditions ever since he was first released in this case in June 2023.  See United States

5

Probation Office's Sentencing Recommendation at 2 (ECF #25). Indeed, even the USPO agrees that Mr. Adams "is a good candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2)." Id. Moreover, since his release in this case, Mr. Adams has been heavily involved with getting services from the Veterans Administration to address his grand mal seizures and related emotional issues, including participating in a work-therapy program where he helps other veterans. Defendant's Memorandum at 7-8. Getting services from the VA has not only helped Mr. Adams generally, but it has been important to his rehabilitation, as his emotional issues are related to the assaultive conduct he has pled guilty to in this case. Id. at 6-8, 10. Permitting Mr. Adams to self-surrender to BOP will allow him to continue to get services from the VA for a while longer and thus better foster his rehabilitation. Additionally, if the Mr. Adams is sentenced to additional jail time, he wants to make the most of it by participating in rehabilitative and anti-recidivism program offered by the BOP. He will likely not be able to do such programming until he gets to the facility that the BOP designates for him. Thus, if he is incarcerated pending designation by BOP, he will not be able to obtain the benefit of the BOP's rehabilitative and anti-recidivism programs as much as he would if he is allowed to self-surrender.

WHEREFORE the defendant, Justin Dee Adams, replies to the Government's Sentencing Memorandum and moves this Honorable Court to allow him to self-surrender to the Bureau of Prisons should the Court see fit to sentence him to jail time in addition to the more than eight months of time served he already has in on this case.

                          Respectfully submitted,

                          _____/s/_____
                          Jerry Ray Smith, Jr.
                          D.C. Bar No. 448699
                          Counsel for Justin Dee Adams
                          717 D Street, N.W.
                          Suite 310
                          Washington, DC 20004
                          E-mail: jerryraysmith@verizon.net
                          Phone: (202) 347-6101